**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID LOPEZ, as the heir of Swuave Lopez, deceased; AQUANETTA HARRIS, aka AQUANETTA SCRANTON, as the heir of Swuave Lopez, deceased; and THE ESTATE OF SWUAVE LOPEZ, by and through JACQUELINE SCRANTON, as special administrator,<br><br>              Plaintiffs,<br><br>    v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; KEN HARDY, in his individual and official capacity; and SHANE WOMACK, in his individual and official capacity; and DOES I through XX, inclusive,<br><br>              Defendants. | 2:06-cv-00951-BES-GWF<br><br>**ORDER** |

Currently before this Court is a Motion for Summary Judgment (#139) filed by Defendants Las Vegas Metropolitan Police Department (the "LVMPD"), Ken Hardy and Shane Womack on June 16, 2008. Plaintiffs filed an Opposition (#146) and Defendants filed a Reply (#148). For the reasons discussed below, Defendants' motion is granted.

**I. BACKGROUND**

This is an action for damages under 42 U.S.C. § 1983 and Nevada law against the LVMPD and detectives Hardy and Womack, who shot and killed Swuave Lopez ("Lopez") as

///

///

he was attempting to escape from arrest. Plaintiffs David Lopez and Aquanetta Harris are Lopez's parents. Plaintiff Jacqueline Scranton, Lopez's grandmother, is the special administrator for Lopez's estate.

On May 12, 2006, detectives Hardy and Womack were called upon to investigate a carjacking and murder allegedly committed by Lopez. At the time, Lopez was also the subject of an arrest warrant because he had violated his parole by running away from a group home one day after being placed in the home upon his release from incarceration.[1] A witness at the scene of the murder described the brutal nature of the crime, including the fact that Lopez shot the victim three times at point-blank range then burned the body with gasoline.[2] The witness told Womack that Lopez had bragged about killing the police, taking hostages, and doing anything he had to do in order to not go back to prison. Lopez had also told the witness that he would kill anyone who "snitched" on him. The detectives discovered from other witnesses that Lopez was driving around that evening, planning to kill another individual named Mike Starr. Mike Starr and others told the detectives they were generally afraid of Lopez and his potential for deadly violence.

Hardy and Womack were present at the apartment complex where Lopez was located and arrested sometime during the morning of May 13, 2006. The detectives saw Lopez being placed into a police vehicle with his hands behind his back in handcuffs. However, shortly thereafter, Lopez exited the vehicle and started to run through the parking lot of the complex and Hardy and Womack chased after Lopez along with other law enforcement officers. Womack testified that he could not see Lopez's hands as he was "running in a full sprint," but he could see that his hands were no longer behind his back. Womack and other officers did not know whether Lopez had been able to obtain a Taser or other weapon while inside the police vehicle. Despite demands from Hardy, Womack and other police officers to stop or they

---

[1] Lopez had been imprisoned for a year-and-a-half for child endangerment, possession of a stolen firearm, and assault with a deadly weapon.

[2] Lopez did not know the victim and the murder was apparently motivated by the fact that Lopez needed to earn "street credit" for a gang he was trying to form.

1  would shoot, Lopez continued to run and the detectives perceived that Lopez might outrun
2  them all and escape.  Hardy was the closest officer to Lopez when he fired one shot.  The shot
3  missed Lopez, who then began running much faster.  Shortly after Hardy fired his shot,
4  Womack fired a second shot that hit and killed Lopez, who immediately fell to the ground.

5  Plaintiffs initiated the current action, alleging federal claims under 42 U.S.C. § 1983 and
6  various state law claims.  An Amended Complaint (#87) filed on August 31, 2007 alleges six
7  separate causes of action.  Defendants now seek summary judgment dismissal of all claims
8  against them.

## II.  ANALYSIS

**A.    Legal Standard for Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party n                     light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts the existence of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences

of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co.*,* 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B.    Individual Liability Under 42 U.S.C. § 1983[3]**

A plaintiff may bring suit under 42 U.S.C. § 1983 against a government official who "acts under color of state law to deprive that person of constitutional rights." See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). Plaintiffs claim that Hardy and Womack caused a deprivation of constitutional rights under the Fourth Amendment[4] by using deadly force to apprehend Lopez. Plaintiffs also allege a substantive due process claim under § 1983 for the unlawful deprivation of their right to a familial relationship with Lopez. Defendants maintain that they did not violate Plaintiffs' constitutional rights. However, even if Plaintiffs can establish a constitutional violation, Hardy and Womack argue that they are entitled to qualified immunity from Plaintiffs' § 1983 claims.

---

[3] Plaintiffs bring their Section 1983 claims against Hardy and Womack in both their individual and official capacities. However, "[i]t is well-established that officials sued in their official capacities are not 'persons' within the meaning of § 1983." Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003) (citation omitted); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (when a person is sued in an official capacity, the real party in interest is the entity of which the office is an agent). Accordingly, because Plaintiffs' claims against the detectives in their official capacity are akin to claims against the LVMPD, such claims are dismissed.

[4] In their Amended Complaint (#87), Plaintiffs also allege that Hardy and Womack violated Fourteenth Amendment rights. However, Plaintiffs concede that "[e]xcessive force claims are properly analyzed under a Fourth Amendment analysis." (Opp. #146), p. 4). Thus, Plaintiffs' allegation regarding a Fourteenth Amendment violation is dismissed.

When a constitutional violation occurs, "law enforcement officers nonetheless are entitled to qualified immunity if they act reasonably under the circumstances." See KRL v. Estate of Moore, 512 F.3d 1184, 1189 (9th Cir. 2008) (citing Wilson v. Layve, 526 U.S. 603, 614 (1999)). The United States Supreme Court outlined a two-step qualified immunity analysis in Saucier v. Katz, 533 U.S. 194 (2001), which requires district courts to first determine whether the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If no constitutional right was violated, the court need not inquire further. Id. If a constitutional violation has occurred, the court's second inquiry under Saucier is to ask whether the law was "clearly established" at the time of defendant's alleged misconduct. Id. The Supreme Court recently modified the procedure outlined in Saucier and concluded that the sequence set forth therein should no longer be regarded as mandatory in all cases. Pearson v. Callahan, No. 07-751, 2009 WL 128768, at *9 (U.S. Jan. 21, 2009). Following Pearson, courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. The Supreme Court noted, however, that the sequence set forth in Saucier often is the appropriate analytical sequence. Id. In this case, the Court concludes that the two-step analysis of Saucier, although no longer required, ins the appropriate analysis.

### 1. Use of Deadly Force

Under Saucier, the Court first analyzes whether Plaintiffs have shown a constitutional violation. Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard. Long v. City and County of Honolulu, 511 F.3d 901, 906 (9th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989); Tennessee v. Garner, 471 U.S. 1 (1985)). The use of deadly force to prevent the escape of a felony suspect is constitutionally reasonable "if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." See Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (quoting Garner, 471 U.S. at 3). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest

by flight." Long, 511 F.3d at 906 (quoting Graham, 490 U.S. at 396); see also Garner, 471 U.S. at 11-12 (if there is probable cause to believe that the suspect has committed a "crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."). In judging reasonableness, the Court also considers the risk of harm that Defendants' actions posed in light of the threat that they were attempting to eliminate. Scott v. Harris, 550 U.S. 372 (2007). In weighing these risks, it is "appropriate . . . to take into account not only the number of the lives at risk, but also their relative culpability." Id.

Plaintiffs' Fourth Amendment claim does not survive summary judgment because Hardy and Womack were reasonable in using deadly force to prevent Lopez's escape. Although Plaintiffs disagree that the use of deadly force was reasonable under the circumstances of this case, the facts relevant to the inquiry are undisputed. Plaintiffs concede that Defendants had probable cause to believe Lopez had committed a heinous "crime involving the infliction or threatened infliction of serious physical harm." Garner, 471 U.S. at 11. Plaintiffs also concede that Lopez was attempting to escape from police custody, that he failed to stop when ordered to do so, and that Defendants warned that would shoot. Finally, Plaintiffs do not dispute Defendants' perception that Lopez was potentially armed or that he was capable of posing a serious threat of harm to others if he escaped. Plaintiffs submit the deposition testimony of Officer Cannon and liability expert Donald P. Van Blaricom to establish that Defendants' use of deadly force was unnecessary because one of the many police officers chasing Lopez should have been able to catch Lopez and "run him to the ground" without the use of deadly force. Plaintiffs claim that Womack, at least, was close enough when he shot at Lopez that he should have been able to catch him. However, whether somebody should have been able to outrun Lopez is immaterial. Moreover, Plaintiffs' evidence does not create a triable issue of material fact because it does not contradict Defendants' perception that Lopez posed an immediate danger to others or that Lopez was about to successfully evade arrest by flight.

///

///

The circumstances of this case are similar to the facts present in <u>Forrett v. Richardson</u>, 112 F.3d 416, 419 (9th Cir. 1997), overruled on other grounds by <u>Chroma Lighting v. GTE Products Corp.</u>, 127 F.3d 1136 (9th Cir. 1997). <u>Forrett</u> involved a suspect who shot his victim at point-blank range, stole a number of guns, eluded the police in a residential area, and was in the process of scaling a backyard wall in order to escape when he was shot. The suspect had been told to stop and surrender, but refused. <u>Id.</u> at 418. The court reasoned that using deadly force was justified because the police reasonably feared the suspect "would seize an opportunity to take an innocent bystander hostage." <u>Id.</u> at 421. As the Ninth Circuit Court has emphasized, "broad discretion . . . must be afforded to police officers who face a tense situations" and courts should defer "to the judgment of reasonable officers on the scene." <u>Jeffers v. Gomez</u>, 267 F.3d 895, 909 (9th Cir. 2001).

In light of the foregoing analysis, the Court finds the use of deadly force by Hardy and Womack was reasonable and did not constitute an unconstitutional use of excessive force. Even assuming the existence of some triable issues as to the question of whether the use of deadly force was constitutional in this case, Defendants Hardy and Womack would be entitled to qualified immunity because the law was not sufficiently settled, at the time of the incident, that Defendants could not use deadly force in the circumstances they confronted. See, e.g., <u>Brosseau v. Haugen</u>, 543 U.S. 194, 200-01 (2004) (finding, where officer shot fleeing suspect who presented risk to others, Fourth Amendment law not "clearly established"; noting "this area is one in which the result depends very much on the facts of each case"). Moreover, Plaintiffs have completely failed to carry their burden of showing that, at the time Hardy and Womack allegedly violated decedent's Fourth Amendment rights, such rights were clearly established. See <u>Kennedy v. Ridgefield</u>, 439 F.3d 1055, 1065 (9th Cir. 2006) (plaintiff has the burden of showing, at the time of the alleged violation, the constitutional right at issue was clearly established). Plaintiffs have proffered no meaningful argument and no case law to support their contention that "there is no haziness" in this case because "[t]he constitutional limits on the use of excessive force had been clearly established for almost two decades at the time the Decedent was shot." (Opp. (#146), p. 10).

Accordingly, the Court finds that even if Lopez's Fourth Amendment rights were violated, Defendants Hardy and Womack are entitled to qualified immunity. The Court therefore grants Defendants' Motion for Summary Judgment on Plaintiffs' First Cause of Action.

### 2.  Right of Familial Association

Plaintiffs allege that by violating Lopez' Fourth Amendment rights, Defendants also violated Plaintiffs' Fourteenth Amendment rights by interfering with their familial relationship with Lopez. Defendants argue that because no constitutional violation occurred, they are entitled to summary judgment on this claim. The parents and children of a person killed by law enforcement officers may assert a substantive due process claim under the Fourteenth Amendment based on the deprivation of their liberty interest arising out of their relationship with the decedent. See Moreland v. Las Vegas Metropolitan Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998). In the context of police pursuit of a fleeing suspect, a plaintiff must establish that the officer used excessive force with the intent to harm the suspect physically or to worsen his legal plight to establish § 1983 liability. See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998)). If the officer's actions were objectively reasonable, "it follows that his conduct d[oes] not offend the more stringent standard applicable to substantive due process claims." Moreland, 159 F.3d at 371, n. 4.

Because the Court has concluded that Defendants' conduct was reasonable and therefore did not result in a constitutional violation, Defendants are also entitled to summary judgment on Plaintiffs' familial relationship claim. See, e.g., Galipo v. City of Las Vegas, 2007 WL 1381774, at *6 (D.Nev. 2007); see also Gausvik v. Perez, 392 F.3d 1006, 1008 (9th Cir. 2004) (familial interference claim is moot where there was no violation of any underlying constitutional rights of plaintiff).

**C.  Municipal Liability under 42 U.S.C. § 1983**

In their Amended Complaint, Plaintiffs allege that they were deprived of their constitutional rights as a result of Defendant LVMPD's policy, practice and custom of

"tolerat[ing] and ratify[ing] the use of excessive, unreasonable and deadly force by its officers." (Am. Comp. (#87) at ¶ 32). Plaintiffs also allege that LVMPD had a policy, practice and custom of "negligently hir[ing], train[ing] and supervis[ing] its officers, agents, and employees." Id. At ¶ 33.

To impose § 1983 liability on a municipality, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference"' to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." Plumeau v. School Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (quoting Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992)); see also Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) ("a municipality cannot be held liable under § 1983 on a respondeat superior theory"). In the context of summary judgment, the plaintiff "must offer enough evidence to create a genuine issue of material fact as to both the existence of a constitutional violation and municipal responsibility for that violation." Herrera v. Las Vegas Metropolitan Police Dep't, 298 F. Supp.2d 1043, 1052 (D.Nev. 2004) (citing Monell, 436 U.S. at 690-91).

Assuming *arguendo* that a constitutional violation occurred as a result of the use of deadly force, in order to defeat a motion for summary judgment and establish municipal liability, Plaintiffs "must provide evidence from which a reasonable jury could find that there was an inadequate training program, and that the Defendant was deliberately indifferent to whether its officers received adequate training. There must also be actual causation between the inadequate training and the deprivation of the Plaintiff's rights." Id. (citing Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989)). To this end, a plaintiff must proffer actual evidence of inadequate training; proof of a single incident of deviant official action is not enough. Id.

Defendant LVMPD argues that it is entitled to summary judgment because Plaintiffs have failed to offer any evidence to substantiate their allegation regarding the existence of a policy, practice or custom that could be causally related to the alleged constitutional

1 deprivations. (Motion (#139), p. 22). In fact, LVMPD points out that Plaintiffs' expert and
2 deposition testimony concedes that no evidence exists to suggest that Hardy and Womack
3 were inadequately trained, supervised, hired, or retained. (Reply (#148), pp. 13-14). The
4 Court finds that Plaintiffs have failed to present evidence to establish a question of fact as to
5 whether a policy, custom or practice was the cause of Lopez's death. Consequently,
6 Defendant LVMPD is entitled to judgment as a matter of law on Plaintiffs' constitutional claims.

**D.    Plaintiffs' State Law Claims**

This Court has ruled that Defendants are entitled to summary judgment on each of Plaintiffs' federal claims. Having dismissed Plaintiffs' federal claims, this Court now declines to exercise its discretionary authority to retain jurisdiction over Plaintiffs' causes of action based on state law. See 28 U.S.C. § 1367(c)(3); Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991) (in the usual case in which federal law claims are eliminated before trial, the district court should decline to exercise jurisdiction over the remaining state law claims). Accordingly, Plaintiffs' fourth, fifth and sixth causes of action are dismissed without prejudice to their refiling those claims in an appropriate Nevada court.

## III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#139) is GRANTED. Plaintiffs' supplemental state law claims are dismissed without prejudice. The clerk of the court shall enter final judgment accordingly.

DATED: This 2nd day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE

10